UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KARL KAUTZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CIVIL ACTION |
| | ) | NO.: 3:02 CV 1874 (JBA) |
| METRO-NORTH RAILROAD | ) | |
| COMPANY and CONSOLIDATED RAIL | ) | |
| CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | July 30, 2003 |

## DEFENDANT, CONSOLIDATED RAIL CORPORATION'S, ANSWERS TO PLAINTIFF, KARL KAUTZ'S, FIRST SET OF INTERROGATORIES

### PRELIMINARY STATEMENT/GENERAL OBJECTIONS

Consolidated Rail Corporation ("Conrail") objects to the plaintiff's characterization or any characterization of the defendant as also including various alleged corporate predecessors, and to the implied request for information concerning alleged "predecessors," and to the implied request for information concerning alleged "related railroad entities" and/or "corporate predecessors."

Conrail objects because on April 1, 1976, pursuant to Section 303 of the Rail Act (45 U.S.C. § 743(b)), various rail properties of Penn Central were conveyed to Conrail, and Congress provided in Section 303 of the Rail Act that "all rail properties conveyed to the corporation (Conrail)… shall be conveyed free and clear of any liens or encumbrances," except certain types of leases. Any pre-conveyance liability of an estate of a railroad in reorganization

1

remained the obligation of the estate of the respective debtor.  Accordingly, Conrail has no

predecessors and is not a successor-in-interest or in liability to any other entity.

A reasonable inquiry and investigation has been made, by the named, answering

defendant prior to responding to the plaintiff's *Interrogatories*.  Answers are based on

information available to those involved in the defense of this litigation, after the investigation

and inquiry described above, and on information available in the *Complaint* or available

employment records.  Conrail objects to any inquiry regarding any location other than where

the plaintiff worked, as overly broad, burdensome and irrelevant to any issue before the Court

and beyond the scope of the Rule of Civil Procedure.  Accordingly, if the Interrogatory is

interpreted as being directed to any location other than the locations where the plaintiff worked,

the defendant objects to the Interrogatory as being overly broad, burdensome, vague,

ambiguous and beyond the scope of the Rule of Civil Procedure.

The responding defendant further objects to these interrogatories to the extent that they

call for materials that are within the attorney-client privilege or the work product doctrine.  Due

to the breadth of the time periods covered herein and the breadth of the subject matter and the

continuing nature of the responding parties' investigation and inquiry, Conrail objects to

further designation of any documents with the privilege or the doctrine.

Conrail objects to these interrogatories on the grounds that they are overbroad and fail

to set forth simple statements of fact to which a response can be made.  Each interrogatory sets

forth statements with respect to lengthy periods of years with no limitation as to precise shop

locations, parties involved or any other aspect of the statement.  Furthermore, Conrail, by

responding to these interrogatories in the affirmative, does not concede that the statements are true at every location and at every time period involved. It is impossible for the defendant to so respond. Admission of one instance of conduct does not constitute an admission that the defendant condones or permitted such conduct.

All objections set forth in this introduction are incorporated by reference in each response set forth below.

In an attempt, however, to respond to the plaintiff's *Interrogatories*, but without having waived any objection thereto, including all objections set forth above that are incorporated by reference, the defendant, Conrail, responds as follows:

INTERROGATORY NO. 1:

List each and every place of work and job assignment of the plaintiff, which, according to your records, the plaintiff held during his employment with you.

ANSWER NO. 1:

Conrail states that the plaintiff's work locations are generally reflected in his "Personnel Records," attached to the *Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents*. However, those records do not necessarily reflect each and every location that the plaintiff worked. Such information is presumably more within the knowledge of the plaintiff that the defendant. Conrail further states that it does not keep records in the ordinary course of business of each and every job assignment or location for each of its employees, and, thus, are unable to respond to this Interrogatory with more specificity. As discovery is ongoing, the defendant reserves the right to amend/supplement this Answer prior

3

to trial.

INTERROGATORY NO. 2:

Describe, in detail, the duties involved in each of the job assignments described in Answer to Interrogatory No. 1.

ANSWER NO. 2:

Objection.  Conrail objects to this Interrogatory on the basis set forth in the Preliminary Statement/General Objections.  Conrail further objects on the grounds that this Interrogatory is overly broad and unduly burdensome.  Although Conrail maintained records in the course of business that generally reflect the positions that the plaintiff worked during the course of his employment with Conrail, the actual duties performed by employees with the same job classification vary.  The information sought is more within the knowledge of the plaintiff that the defendant.  As discovery is ongoing, the defendant reserves the right to amend/supplement this Answer prior to trial.

INTERROGATORY NO. 3:

Detail any steps taken by the Defendant Consolidated Rail Corporation, American Financial Group, Inc., f/k/a American Premier Underwriters, Inc., f/k/a Penn Central Corp., (hereinafter referred to as "Conrail Defendants") to protect the Plaintiff from exposure to noise while employed by the Conrail Defendants and when such steps were implemented.

ANSWER NO. 3:

Conrail objects to Interrogatory No. 3 on the grounds that this Interrogatory is overly broad and unduly burdensome.  Although Conrail maintains records in the course of its

business which generally reflect the positions to which the plaintiff worked during the course of his employment with Conrail, the actual job duties performed by employees with the same job classification vary. As a result, the equipment and/or machinery used and/or operated by the plaintiff or in the plaintiff's vicinity vary. Thus, Conrail is unable to provide a more specific response.

Without waiving these objections, Conrail states as follows: Since April 1, 1976, Conrail has, by way of both oral and written instruction, constantly advised its employees to perform the duties of their occupation in such a fashion as to protect their individual health and safety as well as the health and safety of their fellow workers. Rules pertaining to work safety have been in existence since Conrail came into existence on April 1, 1976. Every employee is and was provided with a copy of those written Rules, and employees are constantly reminded of those Rules while on the job site by supervisory personnel. Such instructions, written and/or oral, include, but are not limited to, the use of protective equipment and performance of job functions in such a manner and fashion as to prevent any situation injurious to the health or safety of the employee of his/her fellow workers.

Conrail's Hearing Conservation measures and policies include compliance with all applicable Federal and State regulations, including, but not limited to, those promulgated by the FRA and OSHA. In general terms, these Hearing Conservation measures and policies were and are designed to reduce noise in the workplace, protect employees from excessive noise exposure and to test audiometrically and/or evaluation and educate employees. The following are some of the measures adopted with regard to noise abatement:

1.  <u>Treat the equipment.</u>  Machines are aligned and oiled, and loose parts, housings and belts are tightened.

2.  <u>Isolate the operators.</u>  If possible, remove the operator from the noise area.

3.  <u>Enclose the machine.</u>  If possible, enclose the equipment, with access for maintenance and production, with high density material, without gaps or leaks.

4.  <u>Absorb the noise.</u>  Reflected sound can be reduced with the use of strategically placed panels.  This will help employees 20 to 30 feet away.

Further, Conrail's Hearing Conservation measures and policies prohibit the purchase of new equipment or machinery that would expose employees normally assigned to work in the vicinity of a sound level of more than 85dB for an eight-hour period.  New equipment that does not meet this noise level specification can only be purchased if the responsible Vice President, the Vice President - Materials and Purchasing, the Director - Safety, and the Chief Medical officer collectively determine that no satisfactory alternative is available.

With reference to the use of hearing protection devices, Conrail has advised and does advise employees to use hearing protection devices by means or oral communication and the use of printed materials, including signs and safety rule booklets.  Additionally, a video presentation entitled, "Hearing Conservation," is shown periodically, and discussions are held at regularly scheduled safety meetings.  Crew packs containing personal hygiene items are distributed daily to train and engine personnel.  Each pack includes a pair of earplugs.

In compliance with OSHA 29 C.F.R. 1910.25(d), Conrail instituted a training program to ensure that employees are instructed concerning the selections, fitting, use and care of

hearing protection equipment.  Supervisors must ensure that employees are training on hearing protection, have been given hearing protection, and have access to replacement hearing protection when required.

Under Conrail's Hearing Conservation measures and policies, hearing protection devices are mandatory in designated areas in various yards and facilities to ensure compliance with the Hearing Conservation Amendment of the OSHA 29 C.F.R. 1910.95 9(c)-(o).  The following is a partial list of equipment that would be included in Conrail's Conservation measures and policies: wheel, locomotive test area during high R.P.M. testing, power generating plants, ladder thread machines, air compressor areas, production at Conrail burning areas, air brake test areas, coal dumpers, sandblasting operations, high-pressure pumping stations, prolonged activity within 200 feet of retarders in use, operation of pneumatic or cartridge tools, grit blast machines, metal-cutting latches, such as amative and Leblond, Lubrise machines, case cleaning areas, grinding machines, boring mill machines, blacksmith furnaces, drill presses, welding areas and injector rooms.

Moreover, color-coded maps have been posted in visible areas throughout the major yards and shops in Conrail's system which indicate areas where hearing protection is mandatory, or areas where hearing protection in only required when performing designated operations, or within stated distances of those designated operations.

Conrail retained Hearing Conservation Noise Control, Inc., 1721 Pine Street, Philadelphia, PA 19103 in 1983 to assist in the administration of its Hearing Conservation measures.  Prior thereto, all hearing conservation activities were undertaken jointly by

members of the Health Services and Safety Departments.  Such efforts and/or strategies

included, but were not limited to, surveying all maintenance of way equipment for noise level,

posting signs on equipment denoting whether hearing protection was required while working

with or in the vicinity of the subject equipment, training of employees regarding the same,

identification of noisy work locations, making hearing protection available to employees and

audiometer testing of employees, as appropriate.

Effective April 1, 1991, IMPACT began performing all of Conrail's audiometric

testing.  Their address is 920 Main Street, Suite 700, Kansas City, Missouri 64205.  As of April

1, 1992, Washington Occupational Health Associates, 1120 19th Street, N.W., Washington, DC

20036, performed all of Conrail's audiometric testing.  Beginning April 11, 1993, Occupational

Health Services of Alexandria, VA performed all of Conrail's audiometric testing.  From April

1, 1994 until May, 1996, Conrail administered its own hearing conservation measures and

policies, including audiometric testing.  Starting in April, 1995, Conrail purchased a mobile

van to conduct audiometric tests on employees.  Prior to the audiometric testing, each

employee was shown a hearing conservation video.  After the audiometric test is performed,

each employee received hearing protection.

Since May, 1996, Quality Mobile Hearing began to perform all of Conrail's

audiometric testing.  Darcel McGee was the manager of Conrail's Hearing Conservation

Program.  Her address is c/o Quality Mobile Hearing, Suite 309, 1 Cherry Hill, Cherry Hill, NJ

08002.

Audiometric testing under the measures is extensive.  To list the names of any employees or

8

particular crafts whose hearing was tested or measured is objected to on the basis that it is unduly burdensome and not reasonably calculated to lead to the production of admissible evidence. However, in the event that the plaintiff was a participant in the program, a copy of the results of said test(s) would be included in the plaintiff's "Medical File," a copy of which is, or will be, produced with the *Defendant, Consolidated Rail Corporation's, Responses to Plaintiff's First Set of Requests for Production of Documents.* Conrail continues to develop and administer its hearing conservation efforts. As discovery is ongoing, the defendant reserves the right to amend/supplement this Answer prior to trial.

<u>INTERROGATORY NO. 4:</u>

For any tests performed by, under the control of, or at the request of the Conrail Defendants to measure the noise levels at the job site or in the facilities in which Plaintiff worked or any part hereof, please state:

     (a)     the date of such test or tests;

     (b)     the person or organization administering such tests;

     (c)     the result of such tests.

<u>ANSWER NO. 4:</u>

Conrail objects to Interrogatory No. 4 on the basis that it is overly broad, unduly burdensome, not relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Conrail states as follows: Conrail monitored noise levels throughout their railroading operations to the extent required by 49 C.F.R. 229.121 and 29 C.F.R. 1910.95. In so responding, Conrail does not admit the applicability of the aforesaid

regulations to the instant case.

By way of further response, Conrail has no present knowledge as to what particular area and/or equipment with which the plaintiff worked and/or time periods involved with each area and/or equipment, such information being within the knowledge of the plaintiff.  Consequently, Conrail is unable to respond to this Interrogatory with further specificity.  As discovery is ongoing, the defendant reserves the right to amend/supplement this Answer prior to trial.

INTERROGATORY NO. 5:

Describe steps taken by the Conrail Defendants, if any, to abate or reduce noise levels in its facilities or on the job sites in which Plaintiff worked.

ANSWER NO. 5:

Please see Answer to Interrogatory No. 3.  As discovery is ongoing, the defendant reserves the right to amend/supplement this Answer prior to trial.

INTERROGATORY NO. 6:

Was any educational program ever undertaken by the Conrail Defendants to inform the Plaintiff of company-approved methods to avoid injury from noise?  If so, please identify the date it commenced and the individuals who were in charge of any such educational programs.

ANSWER NO. 6:

Please see Answer to Interrogatory No. 3.  As discovery is ongoing, the defendant reserves the right to amend/supplement this Answer prior to trial.

INTERROGATORY NO. 7:

Was there any individual noise protection devices provided the plaintiff or to other

workers in their facility, on their job sites, or in the equipment? If so, please state:

      (a)      the date such devices were provided the plaintiff;

      (b)      the date such devices were provided to such other co-workers;

      (c)      the type of device which was provided, including brand name and model

number.

ANSWER NO. 7:

      Conrail objects to Interrogatory No. 7 to the extent that same seeks information that is not specific to the plaintiff, his craft, work locations, or dates of employment.  Without waiving said objection, Conrail states as follows: Conrail, by way of both oral and written instructions, constantly advised its employees to perform the duties of their operations in such a fashion as to protect their individual health and safety, as well as the health and safety of their fellow workers.  Conrail has made various hearing protection devices available to all employees.  The defendant's record keeping policies do not include a continuing list of such equipment provided to a specific individual, as such records are not the type Conrail maintains and/or was required to maintain.  By way of further response, please see Answer to Interrogatory No. 3. As discovery is ongoing, the defendant reserves the right to amend/supplement this Answer prior to trial.

INTERROGATORY NO. 8:

      Please identify any tangible information from the Federal Railroad Administration concerning railroad noise, sound testing, surveys, etc.

ANSWER NO. 8:

Conrail objects to Interrogatory No. 8 on the basis that the same is overly broad, unduly burdensome, not relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent that same seeks information not specific to the plaintiff, his craft, work locations, or dates of employment.  In addition, Conrail objects to this Interrogatory in that it is overly broad and vague to the extent that it seeks to request "any tangible evidence" from the Federal Railroad Administration ("FRA") concerning noise. Conrail states that such information is equally accessible to the plaintiff as to the defendant.   As discovery is ongoing, the defendants reserve the right to amend/supplement this Answer prior to trial.

INTERROGATORY NO. 9:

Identify all rules, regulations or guidelines pertaining to the use of hearing protection.

ANSWER NO. 9:

Please see Answer to Interrogatory No. 7.


I, Lori A. McCarthy, depose and say that I am counsel for the defendants Consolidated Rail Corporation and American Financial Group, Inc., and that I sign these *Answers to Interrogatories* for and on behalf of these defendants, and I am authorized to do so; that the matters stated in the foregoing Answers are not all within my personal knowledge, and I have been informed that there is no officer of Conrail or American Financial who has personal

knowledge of all such matters; that such facts are stated in said answers which are not within

my personal knowledge have been assembled by authorized employees and employees with

personal knowledge or agents of the defendants, and I am informed and believe that the facts

stated in said Answers are true and so state under the pains and penalties of perjury this 30th

day of July, 2003.

Respectfully submitted,
CONSOLIDATED RAIL CORPORATION and
AMERICAN FINANCIAL GROUP, INC.
By its Attorneys,

_____
Michael B. Flynn,#ct21215
Lori A. McCarthy #ct19557
FLYNN & ASSOCIATES, P.C.
189 State Street, Sixth Floor
Boston, MA 02109
(617)722-8253
(617)722-8254 (facsimile)

## <u>CERTIFICATION</u>

This is to hereby certify that a copy of the foregoing has been mailed, postage prepaid,

this 30th day of July, 2003, to the following:

Scott E. Perry, Esq.
Cahill & Goetsch, P.C.
43 Trumbull Street
New Haven, CT 06511

Anthony Sutton, Esq.
Ryan, Ryan, Johnson & Deluca, LLP
P.O. Box 3057
Stamford, CT 06905

_____
Lori A. McCarthy

G:\F & A\CASE FILES\Norfolk Southern Occupational\Hearing Loss\Kautz\Pleadings\AIT.7.30.03.doc

14